T.C. Memo. 1999-223


UNITED STATES TAX COURT


ALTON M. TOWLES, JR., AND ESTATE OF BARBARA D. TOWLES, DECEASED,
ALTON M. TOWLES, PERSONAL REPRESENTATIVE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3889-98.                    Filed July 6, 1999.


B. Gray Gibbs, for petitioners.

Monica Howland and J. Scott Simpson, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


CHIECHI, Judge:  Respondent determined the following de-

ficiencies in, and accuracy-related penalties under section

6662(a)[1] on, petitioners' Federal income tax (tax):

_____

[1]All section references are to the Internal Revenue Code in
effect for the years at issue.  All Rule references are to the
                                        (continued...)

|  | | Accuracy-Related |
| Year | Deficiency | Penalty |
| 1994 | $8,619 | $934 |
| 1995 | 10,939 | 2,188 |

The issues remaining for decision are:

(1)  Are petitioners entitled for each of the years at issue to deduct under section 212 certain expenditures that they made during each of those years with respect to certain real property that they owned?  We hold that they are not.

(2)  Are petitioners liable for each of the years at issue for the accuracy-related penalty under section 6662(a)?  We hold that they are.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, Alton M. Towles (Mr. Towles) resided in Florida.

Around March 1991, Barbara D. Towles (Ms. Towles), who died on August 19, 1997, and her husband Mr. Towles acquired certain real property located at 18 Paradise Lane, Treasure Island, Florida (Paradise Lane property), which was zoned as a multi-family property.  Located on that property at that time was a two-story building consisting of about 6,250 square feet that was configured as six apartment units, all of which were being leased

[1](...continued)
Tax Court Rules of Practice and Procedure.

to different tenants (tenants). At the time Ms. Towles and Mr. Towles acquired the Paradise Lane property, four of those units were located on the second floor of the building situated on that property, and two of them were located on the ground floor of that building. Two of the four second-floor apartment units were two-bedroom units, and two of them were one-bedroom units. When Ms. Towles and Mr. Towles acquired the Paradise Lane property and throughout the years at issue, there were six parking spaces that were under cover and two parking spaces that were not under cover on that property.

In March 1993, a so-called no-name storm (storm) occurred that ripped the dock for the Paradise Lane property from its concrete pilings and caused certain water and wind damage to the two ground-floor apartment units, but no damage to the four second-floor apartment units, at that property. Because of the storm damage to the two ground-floor apartment units, the occupants had to vacate those units while repairs were made to them. Those tenants were able to move back into those apartment units within ten days to two weeks after the storm.

Although petitioners had insurance coverage for loss of business income with respect to the Paradise Lane property, they made no claim for any income lost as a result of the storm.

In mid-May 1993, all of the tenants of the apartment units at the Paradise Lane property, except Adrienne Renee Nichols (Ms.

Nichols), received eviction notices or were advised that their leases were not being renewed, including Charles E. Alexander, Jr. (Mr. Alexander) who had lived in a two-bedroom, second-floor unit since March 1991. In August 1993, the remaining tenant Ms. Nichols, who had lived since June 1987 in a one-bedroom, second-floor apartment unit at the Paradise Lane property, received a notice that her lease was not being renewed.

Ms. Towles and Mr. Towles separately informed Mr. Alexander that he was being evicted because they were converting the Paradise Lane property into their principal residence. Although neither Ms. Towles nor Mr. Towles ever informed Ms. Nichols why her lease was not being renewed, three other tenants of three apartment units at that property, including Mr. Alexander, advised Ms. Nichols that Ms. Towles and/or Mr. Towles advised them that their respective leases were not being renewed because Ms. Towles and Mr. Towles intended to convert the Paradise Lane property into a single-family dwelling. Neither Mr. Alexander nor Ms. Nichols was ever informed that they were being asked to vacate their respective apartment units because of storm damage to the Paradise Lane property.

On or about June 30, 1993, the tenants of five of the six apartment units at the Paradise Lane property vacated their respective apartment units pursuant to the notices that they had

received from Ms. Towles and Mr. Towles. Ms. Nichols vacated her apartment unit at that property on November 15, 1993.

In September 1993, Ms. Towles and Mr. Towles moved into one of the two ground-floor apartment units located at the Paradise Lane property. As of the time of the trial in this case, Mr. Towles still resided at the Paradise Lane property.

During the period July 1, 1993, until at least November 15, 1993, work that was unrelated to any damage from the storm that occurred in March 1993 was done in the two two-bedroom, second-floor apartment units at the Paradise Lane property, including tearing down the walls within, and between, those two units and gutting the kitchens and making structural changes to the bathrooms in those units. By November 15, 1993, the two two-bedroom, second-floor apartment units no longer existed. Instead, the wall between those units had been completely torn down so that there was just one huge room where there had previously been two apartment units.

From the time he moved out of the apartment unit that he had been renting at the Paradise Lane property on June 30, 1993, until August 1996 when he moved to Miami Beach, Florida, Mr. Alexander drove by the Paradise Lane property approximately ten times a week. During that period, he never saw either a for-sale sign or a for-rent sign on that property. From the time that she moved out of the apartment unit that she was renting at the

Paradise Lane property on November 15, 1993, until the time of the trial in this case, Ms. Nichols drove by the Paradise Lane property every day on her way to work. During that period, she never saw either a for-sale sign or a for-rent sign on that property.

At some point during 1993, John L. Schultz, Jr. (Mr. Schultz), a building code enforcement inspector for the City of Treasure Island throughout 1993 and 1994 and most of 1995, received a complaint that construction work was being done at the Paradise Lane property without appropriate building permits. Mr. Schultz inspected that property and issued a stop work order on April 5, 1994, with respect to "Changing use of six unit multi-family to single family residence without permit". Mr. Schultz also sent a letter by certified mail to Ms. Towles and Mr. Towles, dated June 29, 1994 (June 29, 1994 letter), regarding "Multifamily Dwelling, 18 Paradise Lane". That letter stated in pertinent part:

> This letter is to inform you of the status of the above mentioned property owned by you. The "Stop Work Order" for construction without permits is still in effect. The Certified letter explaining your violations and remedies sent to you on April 19, 1994 was returned unclaimed.
>
> The above dwelling is and will be considered a multifamily building with six units. To change from a six unit multifamily building to a single family residence, appropriate plans and permits must be submitted, approved and completed.

Mr. Schultz included in the last sentence quoted above a reference to changing the building to a single family residence based upon statements that Mr. Towles had made to him.

Prior to the trial in this case, Mr. Towles provided respondent with a copy of what purported to be the June 29, 1994 letter. Petitioner altered the copy of the June 29, 1994 letter that he provided to respondent by whiting out, inter alia, the following sentence from that letter:

> To change from a six unit multifamily building to a single family residence, appropriate plans and permits must be submitted, approved and completed.

Around July 1997 and August 1998, Mr. Towles, who carried an occupational license from the City of Treasure Island during the years at issue until the time of the trial in this case, submitted to the building department of the City of Treasure Island applications for building permits. Those applications variously described the proposed use of the Paradise Lane property as "residence", "single family dwelling", and/or "home". Attached to the application for a building permit that Mr. Towles submitted around August 1998 was a floor plan showing the second floor of the building located on the Paradise Lane property. That floor plan did not describe any of the rooms on the second floor as apartment units. Instead, the rooms in that floor plan were designated as "Living Room", "Dining Room", "Kitchen", "Pantry",

"Family Room", "Study", "Bedroom", "Bath", "Dressing Room", "Storage", and "Screen Porch".

The zoning of the Paradise Lane property as a multifamily property was grandfathered by the City of Treasure Island. If that property had been rezoned as a single-family residence, in order for it to requalify as a multifamily property, it would have to be rezoned as such. The owner of property zoned by the City of Treasure Island as a single-family residence is permitted to obtain building permits from that city in order to do his/her own building and repair work on such property. The owner of property zoned by the City of Treasure Island as a commercial property, including multifamily property, is allowed to obtain building permits from that city in order to do his/her own building and repair work on such property only to the extent that the total cost thereof does not exceed $25,000.

The building located on the Paradise Lane property has not been rented since the tenants moved out in 1993, nor has that property been held out for rent since that time.

With respect to the Paradise Lane property, during 1994 Ms. Towles and Mr. Towles incurred legal expenses of $502.50, insurance expenses of $1,999.77, utility expenses of $804.35, a license expense of $196, and power expenses of $2,150.86 and also expended $43,569.84 for items, the nature of which is not disclosed by the record. With respect to that property, during 1995

Ms. Towles and Mr. Towles incurred legal expenses of $4,332, expenses for repairs and supplies of $2,038.40, utility expenses of $1,927.99, landscaping expenses of $1,719.41, power expenses of $2,731.84, and hazard insurance expense of $2,432.09 and also expended $6,968.31 on items, the nature of which is not disclosed by the record.

Although Ms. Towles and Mr. Towles received rental income from the Paradise Lane property for years prior to 1994, they did not report any such income in their returns for those years. Ms. Towles and Mr. Towles filed a joint tax return (Form 1040) for 1994 and claimed in Schedule A a deduction in the amount of $14,980 for "investment realty repair and maintenance costs." In 1996, Ms. Towles and Mr. Towles filed an amended tax return (Form 1040X) for 1994 and claimed in Schedule E a rental loss of $66,899.22. Respondent has not accepted that amended return. Ms. Towles and Mr. Towles filed a joint tax return for 1995 and claimed in Schedule E a rental loss of $32,795.94.

In the notice of deficiency issued to Ms. Towles and Mr. Towles, respondent disallowed the deduction of $14,980 for "investment, realty repair, and maintenance" costs that they claimed in Schedule A of their 1994 return and the rental loss of $32,796[2] that they claimed in Schedule E of their 1995 return.

---

[2]This amount was rounded to the nearest dollar.

Respondent also determined that they are liable for each of the years at issue for the accuracy-related penalty under section 6662(a) on the underpayment for each of those years that is attributable to, inter alia, that claimed Schedule A deduction and that claimed rental loss.

OPINION

Petitioners bear the burden of proof on the issues presented. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners attempted to satisfy their burden of proof through the testimony of Mr. Towles and certain documentary evidence. Based on our observation of Mr. Towles' demeanor, we did not find him credible. Moreover, Mr. Towles' testimony was contradicted by the testimony of Mr. Alexander and Ms. Nichols, two of respondent's witnesses, and certain documentary evidence. We found each of those two witnesses to be credible and their testimony to be consistent.[3] We also found Mr. Schultz, respondent's remaining witness, to be credible.

Petitioners contend that they are entitled to deduct under section 212 the expenditures that the parties stipulated they

---

[3]On Mar. 8, 1999, petitioners filed a motion to strike the testimony of Mr. Alexander on the ground that he perjured himself at the trial in this case. We shall deny that motion. Even if we were to exclude the testimony of Mr. Alexander, our findings and conclusions herein would not change.

made during 1994 and 1995 with respect to the Paradise Lane property. Respondent disputes that contention.

Deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to the deductions claimed under section 212. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). In the case of an individual, section 212 allows, inter alia, a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or maintenance of property held for the production of income. See sec. 212(2).

The dispute between the parties is whether petitioners held the Paradise Lane property during the years at issue for the production of income within the meaning of section 212(2). On the record before us, we find that petitioners have failed to show that that property was held for the production of income within the meaning of that section. We further find on that record that petitioners have failed to establish that they are entitled under section 212 to the deductions that they are claiming for the years at issue.[4]

---

[4]Assuming arguendo that petitioners had established that the Paradise Lane property was held for the production of income during 1994 and 1995, on the record before us, we find that petitioners have failed to show that certain of the expenditures incurred during those years do not constitute capital expenditures that may not be deducted in their entirety for those years.

Petitioners contend that they are not liable for each of the years at issue for the accuracy-related penalty under section 6662(a) on the underpayment of tax for each such year that is attributable to the deductions with respect to the Paradise Lane property that they claimed in their returns for those years. On the record before us, we find that petitioners have failed to establish that they had reasonable cause and that they acted in good faith in claiming those deductions. See sec. 6664(c)(1); sec. 1.6664-4(a) and (b), Income Tax Regs. We further find on that record that petitioners have failed to show that they are not liable for each of the years at issue for the accuracy-related penalty under section 6662(a) on the underpayment of tax for each such year that is attributable to the deductions with respect to the Paradise Lane property that they claimed in their 1994 and 1995 returns.

To reflect the foregoing and the concessions of the parties,

<u>An Order denying petitioners'</u>
<u>motion to strike testimony will be</u>
<u>issued, and decision will be</u>
<u>entered under Rule 155</u>.